E-FILED
Friday, 29 February, 2008  03:16:23 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

**Jo Ann Agent, f/k/a Jo Ann Coats,**

    Plaintiff,

v.

**Sears Logistics Services, Inc.,**

    Defendant.

No. 07-2113

Judge McCuskey
Magistrate Judge Bernthal

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff, Jo Ann Agent ("Plaintiff" or "Agent"), brought a two count Complaint against Sears Logistics Services, Inc. ("Defendant" or "Sears") in Kankakee County Circuit Court, which was removed to this Court on June 11, 2007. In Count I, Plaintiff alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA"). Count II alleges retaliatory termination in violation of Illinois public policy for Plaintiff's filing of a workers' compensation claim.  Both of these claims should be dismissed, as there is no genuine issue of material fact to preclude summary judgment under Rule 56.

Plaintiff's workers' compensation retaliation claim must be dismissed because Plaintiff cannot show any link between her claim for workers' compensation benefits and her termination or that Sears' stated reason for her termination was pretext.  Plaintiff's claim under the ADA is untenable because Plaintiff failed to exhaust her administrative remedies by filling a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Furthermore, as with her workers' compensation retaliation claim, Plaintiff is unable to show that Sears' reason for her termination was pretext for disability discrimination.

Thus, Sears respectfully requests that this Court dismiss Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 56.

## II. STATEMENT OF MATERIAL FACTS

**Material Background Facts**

1. Agent was employed as a Spotter at Sears' Manteno, Illinois warehouse facility. (Agent Dep. 23).[1]

2. The Manteno facility warehouses and provides logistics services for Sears retail stores. (Batka Decl. ¶ 3; Agent Dep. 26).

3. As a Spotter, Ms. Agent was responsible for driving a tractor truck to transport semi trailers full of Sears merchandise around the Manteno facility. (Agent Dep. 23).

4. As a logistics service provider for Sears retail stores, the business of the Manteno facility is seasonal, in that the retail stores "stock up" for the peak holiday season. (Batka Decl. ¶ 4; Agent Dep. 26-27).

5. As a result of this seasonal cycle, the Manteno facility hires numerous additional seasonal employees beginning in September of each year, and lays off most of these employees by mid-December of each year. (Batka Decl. ¶¶ 5-6).

**Ms. Agent's Alleged Workplace Injury**

6. On January 2, 2005, Ms. Agent drove her tractor truck over a pothole on Sears' property while traveling less than 15 or 20 miles per hour. (Agent Dep. 32-33).

7. Ms. Agent claims that she was "flung around" the inside of her truck as a result, and she injured her neck. (Agent Dep. 32).

---

[1] References herein are to the record evidence contained in Defendant's Appendix in Support of Motion for Summary Judgment, which is incorporated herein by reference. References to Plaintiff's deposition will appear as "Agent Dep. __". References to the exhibits to her deposition will appear as "Agent Dep. Ex. __." References to Robin Batka's Declaration will appear as "Batka Decl. ¶ __).

8.    Ms. Agent did not report any injury on January 2, 2005, because she "didn't think it would be something major." (Agent Dep. 36).

9.    On January 4, Ms. Agent came into work and filled out an accident report describing the incident. (Agent Dep. 43; Agent Dep. Exs. 6-7).

10.    Also on January 4, Ms. Agent provided Sears a doctor's note stating that she would be unable to work until she saw on orthopedic physician. (Agent Dep. 48; Agent Dep. Ex. 8).

11.    Ms. Agent did not work from January 4 to January 17, 2005. (Agent Dep. 50-53).

12.    On January 17, 2005, Ms. Agent provided Sears with another doctor's note releasing her for light duty with no lifting over five pounds, no repetitive use of her upper extremities, and no pushing or pulling. (Agent Dep. 51-52; Agent Dep. Ex. 9).

13.    Agent reported for work on January 18 and 19, 2005. (Agent Dep. 53).

14.    On or about January 21, 2005, Agent provided Sears another doctor's note by which she was taken off of work indefinitely. (Agent Dep. 55-56; Agent Dep. Ex. 10).

**Ms. Agent's Period of Leave**

15.    From January 21, 2005 until November 17, 2005, Ms. Agent provided Sears with monthly doctor's notes stating that she remained unable to work. (Agent Dep. 61-62; Agent Dep. Ex. 11).

16.    At the end of January, 2005, Ms. Agent was involved in a car accident which caused increased pain in her neck. (Agent Dep. 78-79; Agent Dep. Ex. 14).

17.    Sometime between January 21, 2005 and March of 2005, Sears' Linda Carpenter (a Human Resources Assistant) asked Ms. Agent to come in and fill out Family Medical Leave Act ("FMLA") paperwork. (Agent Dep. 64-65).

18. This FMLA paperwork was eventually completed by Ms. Agent on March 28, 2005, and it indicated that Ms. Agent's medical leave had begun on January 20, 2005. (Agent Dep. 64-65; Agent Dep. Ex. 11 at "Sears 000244").

19. On or about April 11, 2005, Sears sent Ms. Agent notice that her FMLA leave would expire on April 13, 2005, and that Ms. Agent would "not be entitled to job protection for additional leave." (Agent Dep. 84; Agent Dep. Ex. 15).

20. Ms. Agent applied for workers' compensation benefits in May of 2005. (Appendix Ex. D).

21. By November of 2005, Ms. Agent had no physical limitations in her day-to-day activities. (Agent Dep. 87-88).

22. On December 15, 2005, Ms. Agent's doctor gave her a note stating that she was free to return to work "full duty" on December 19, 2005. (Agent Dep. 89; Agent Dep. Ex. 16).

23. As of December 15, Ms. Agent no longer required any leave of absence. (Agent Dep. 90).

**Ms. Agent Attempts to Return to Work**

24. On December 15, Ms. Agent brought her doctor's note to Sears and delivered it to Linda Carpenter and Erika Schwanbeck (another Human Resources Assistant). (Agent Dep. 90-91).

25. According to Ms. Agent, Ms. Carpenter stated that she did not believe there was a job available for Ms. Agent, but that Sears would get back to her. (Agent Dep. 91).

26. Ms. Agent also alleges that Ms. Carpenter and Ms. Schwanbeck joked that Ms. Agent probably set off the metal detector because of metal in her neck. (Agent Dep. 91-92).

**There Is No Job Available For Ms. Agent**

27. Robin Batka, Sears' Human Resources Manager, had been out of the office on December 15, but she received Ms. Agent's doctor's note on December 16. (Batka Decl. ¶ 12).

28. Between September and November of 2005, the facility had hired approximately 40 additional employees. (Batka Decl. ¶ 6).

29. By December 15, which was the close of the holiday season, the facility was in the process of terminating these 40 additional employees. (Batka Decl. ¶¶ 9-12).

30. There were absolutely no open positions in the facility, seasonal or permanent, at the time Ms. Agent sought to return to work. (Batka Decl. ¶ 10).

31. In fact, the last seasonal employee to begin work in 2005, Alex Snodsmith (a college student working over his winter break), had been hired in November of 2005. (Batka Decl. ¶ 7). His seasonal employment ended on January 13, 2006. (Batka Decl. ¶ 8).

32. In fact, the facility continued to lay off employees after December 15, 2005. From December 15 to December 31, 2005, the facility laid off at least 25 employees. (Batka Decl. ¶ 11).

33. Ms. Agent is unaware of anyone hired by Sears between December 15, 2005 and early 2007. (Agent Dep. 98).

34. As there was no available job for Ms. Agent, Ms. Batka wrote Ms. Agent a letter explaining such and informing Ms. Agent that she was being taken "off role, effective immediately." (Agent Dep. Ex. 17; Batka Decl. ¶ 14).

**Ms. Agent Contacts the EEOC**

35. Ms. Agent first contacted the EEOC by phone on December 26, 2006. (Agent Dep. 100; Agent Dep. Ex. 21).

36. Ms. Agent did not fill out an EEOC Charge Questionnaire until January 5, 2007.

-5-

(Agent Dep. 101; Agent Dep. Ex. 22).

37. Ms. Agent did not sign any Charge of Discrimination until January 20, 2007, and she did not file it with the EEOC until January 25, 2007. (Agent Dep. 102-03; Agent Dep. Ex. 23).

**Ms. Agent Was Never Disabled**

38. Even in the first two weeks following her alleged accident, Ms. Agent was able to care for herself, including dressing herself, feeding herself, driving, and grocery shopping. (Agent Dep. 58).

39. In fact, there were no day-to-day activities which Ms. Agent was unable to perform from February to November, 2005. (Agent Dep. 73-75).

40. Ms. Agent worked for approximately 13 hours as an election judge on April 15, 2005, a job that required sitting, standing, and walking around. (Agent Dep. 75-77; Agent Dep. Ex. 13).

41. Prior to this April 15, 2005 election, Ms. Agent assisted her husband in putting up election signs. (Agent Dep. 109).

42. By November of 2005, Ms. Agent had no physical limitations whatsoever. (Agent Dep. 87-88).

43. By December of 2005, Ms. Agent was physically able to work in any job at Sears. (Agent Dep. 89).

**Other Material Facts**

44. No one at Sears ever mentioned Ms. Agent's Workers' Compensation claim to her. (Agent Dep. 63, 85, 97).

45. Apart from the alleged comments about the metal detector, described above, no

one at Sears ever made any sort of comment regarding Ms. Agent's alleged injury or disability. (Agent Dep. 63, 85, 97).

## III. ARGUMENT

### A. The Rule 56 Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. *O'Neal v. City of Chicago*, 392 F.3d 909, 910-911 (7th Cir.2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc*., 387 F.3d 921, 924 (7th Cir.2004). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986); *Lawrence v. Kenosha Cty*., 391 F.3d 837, 842 (7th Cir.2004).

### B. Plaintiff's Workers' Compensation Discrimination Claim Must Be Dismissed

In order to prove workers' compensation retaliation in Illinois, a plaintiff must show: "(1) that she was the defendant's employee before her injury; (2) that she exercised a right granted by the Workers' Compensation Act; (3) and that she was discharged from her employment with a causal connection to her filing a workers' compensation claim. . . The element of causation is

not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *McCoy v. Maytag Corp.*, 495 F.3d 515, 520-21 (7th Cir. 2007).

### 1.    Illinois Law Does Not Require An Employer To "Bump" Any Employee or to Create a New Job for an Employee Returning to Work After a Workplace Injury

Quite simply, Illinois workers' compensation law is not a "job protection" statute that saves an employee's job while she is off work due to a compensable injury. Indeed, an Illinois employer may terminate an employee for absenteeism "even if the absenteeism is caused by a compensable injury." *Hess v. Clarcor Inc.,* 237 Ill.App.3d 434, 603 N.E.2d 1262, 1272-73 (2d Dist. 1992); *Marin v. American Meat Packing Co.,* 204 Ill.App.3d 302 (1st Dist. 1990). Thus, Sears had no obligation to "bump" any employee upon Plaintiff's attempt to return to work; nor to create a new job for her.

### 2.    Plaintiff Cannot Prove a Claim of Workers' Compensation Retaliation

The Seventh Circuit has yet to resolve the issue of whether the proper framework for a workers' compensation retaliation claim is the Illinois framework or the familiar *McDonnell Douglas* burden-shifting framework. *McCoy*, 495 F.3d at 522. Under the *Erie* doctrine, however, it is clear that the Illinois framework must apply. *See Carter v. Tennant Co.,* 383 F.3d 673, 678 (7th Cir.2004*); see also Bourbon v. Kmart Corp.,* 223 F.3d 469, 474-77 (7th Cir.2000) (Posner, J., concurring) ("If the requirement of proving cause is so attenuated as to give the plaintiff a boost toward winning his case that he would not have under ordinary rules of pleading and production, then there is a conflict with substantive state law, and what the federal courts inaptly call the *McDonnell Douglas* standard for proving retaliation must give way in any retaliation case governed by state law."). Under the Illinois framework, Plaintiff must come forward with some evidence of a causal connection between her termination and her filing a

workers' compensation claim. *Id.* Plaintiff has been unable to do so. In fact, she freely admits that no one from Sears has ever mentioned her workers' compensation claim to her. (SMF ¶ 44).

While Sears believes that the Illinois framework is applicable, the question is academic because either framework provides that Sears may prevail by showing a valid, non-pretextual reason for Plaintiff's termination. *Id.* It is clear that Plaintiff's termination was due to the fact that there simply was no open job for Plaintiff to perform upon her return to Sears in December of 2005. (SMF 27-34). Plaintiff is unable to show that Sears' articulated reason for her termination is pretext for retaliation. The issue in determining pretext is not the correctness or desirability of the decision, but instead whether the employer "honestly believed the reasons it gave" for the decision. *Fane v. Locke Reynolds*, 480 F. 3d 534, 541 (7th Cir. 2007) The plaintiff "loses even if the reasons are foolish, trivial or baseless." *Id.* In other words, "[p]retext means a lie, specifically, a phony reason for some action." *McCoy*, 495 F.3d at 523. Here, there is absolutely no evidence that Sears' articulated reason for Plaintiff's termination – the lack of an open job for her at the time of her return – is untrue. Rather, the evidence shows quite the opposite; that Sears had no open positions, and indeed, continued to lay off employees after December 15, 2005.[2]

Thus, Plaintiff's retaliation claim must fail.

### C. Plaintiff's Disability Discrimination Claim Must Be Dismissed

#### 1. Plaintiff's ADA Claim is Time-Barred

The ADA adopts the filing procedures and timing requirements of Title VII. 42 U.S.C. § 12117(a). Thus, under the ADA, a Plaintiff must file her EEOC Charge within 300 days of the

---

[2] Additionally, the timing between Plaintiff's filing for workers' compensation benefits and her eventual termination is far too long to support any inference of discrimination. Plaintiff applied for benefits in May of 2005, and was not terminated until December of 2005. *See supra.* The Courts have uniformly found such a gap (here, seven months) to be indicative that the termination was not retaliatory. *See e.g. Maldonado v. Metra*, 743 F.Supp. 563, 568 (N.D. Ill. 1990) (five months).

occurrence of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e) and § 12117(a); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). When a Plaintiff does not bring a Charge within the 300-day period, she is precluded from bringing her claim in court. *Id.*

In the present case, Ms. Agent's employment was terminated on December 16, 2005. (SMF ¶ 34). She freely admits that she knew she had been terminated at that time. (Agent Dep. 104). However, Ms. Agent did not file a Charge with the EEOC until January 25, 2007, well over 300 days after her termination. (SMF ¶ 37). As such, her claim is properly dismissed. *Koelsch*, 46 F.3d at 707.

### 2. Even If Her ADA Claim Was Timely, Plaintiff Has Failed To Raise An Issue Of Material Fact To Survive Summary Judgment

In order to prevail in her ADA claim, Plaintiff must show: (1) that she suffers from a disability as defined by the ADA; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability. *See Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir.2005).

#### a. Plaintiff was not disabled at the time of her termination.

In order to prevail under the ADA, Plaintiff must prove that she was disabled. To be covered by the ADA, the disability must prevent or severely restrict a plaintiff from performing one or more major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998). A major life activity is an activity of "central importance to daily life," including functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking, breathing, learning, and working. *Toyota Motor Mfg. of Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

Ms. Agent was never disabled. Even in the first two weeks following her alleged accident, Ms. Agent was able to care for herself, including dressing herself, feeding herself,

driving, and grocery shopping. (SMF ¶ 38). In fact, Ms. Agent was able to perform all day-to-day activities from February to November, 2005. (SMF ¶ 39). Moreover, she worked for approximately 13 hours as an election judge on April 15, 2005, a job that required sitting, standing, and walking around. (SMF ¶ 40). Prior to this April 15, 2005 election, Ms. Agent assisted her husband in putting up election signs. (SMF ¶ 41).

Finally, Ms. Agent agrees that, by November of 2005, she had no physical limitations whatsoever. (SMF ¶ 42). Ms. Agent agrees that, by the time of her termination, she was physically able to work any job at Sears. (SMF ¶ 43). Thus, she simply was not disabled, and cannot prevail on her ADA claim. *Martin v. Discount Smoke Shop, Inc.*, 443 F.Supp.2d 981, 991-94 (Hon. McCuskey, C.D. Ill. 2006).

### 3. Plaintiff was terminated for a valid, non-pretextual reason.

Plaintiff cannot produce any evidence that her employment was terminated because of her disability. Rather, it is clear that Plaintiff's termination was due to the fact that there simply was no open job for Plaintiff to perform upon her return to work. (SMF ¶¶ 27-34). As the Seventh Circuit has explained, under the ADA:

> An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to "bump" other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a "new" position for the disabled employee.

*Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)(internal citations omitted).

Furthermore, Plaintiff is unable to demonstrate that any non-disabled individual was treated more favorably than her. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937-98 (7th Cir. 2007). She has not named any non-disabled individual who was returned to work after eleven months of leave by "bumping" some other individual or having a new job created for them. As such, her claims fails. *Id.*

-12-

Finally, as explained above in the analysis of her retaliation claim, Plaintiff is unable to show that Sears' articulated reason for her termination is pretext for discrimination. *See supra.* In fact, the evidence shows that Sears simply had no open job. As such, Plaintiff cannot prove pretext and her claim must be dismissed.

### IV.  CONCLUSION

WHEREFORE, Defendant, Sears Logistics Services, Inc., respectfully requests that this Court grant its Motion for Summary Judgment, dismiss Plaintiff's Complaint against Defendant in its entirety and with prejudice, and grant Defendant any further relief deemed necessary and appropriate by the Court.

/s/ David L. Christlieb
David L. Christlieb

Adam C. Wit (#06230538)
David L. Christlieb (#06281173)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601
312.372.5520

Dated: February 29, 2008