UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JO ANN AGENT f/k/a Jo Ann Coats, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07-CV-2113 |
| ) | |
| SEARS LOGISTICS SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#14) filed by Defendant, Sears Logistics Services, Inc. This court has carefully reviewed Defendants' Motion, Memorandum in Support (#15) and supporting Exhibits (#16), as well as the Memorandum in Opposition (#17) filed by Plaintiff, Jo Ann Agent, and Defendant's Reply (#19). Following this careful and thorough review, Defendant's Motion for Summary Judgment (#14) is GRANTED.

BACKGROUND

On June 11, 2007, Defendant filed a Notice of Removal (#1) and the Complaint Plaintiff filed in the circuit court of Kankakee County was removed to this court. In Count I of her Complaint, Plaintiff alleged disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. In Count II of her Complaint, Plaintiff alleged retaliatory discharge for filing a workers' compensation claim. On June 18, 2007, Defendant filed an Answer and Affirmative Defenses (#5). A Discovery Order (#8) was entered and this case was scheduled for a final pretrial conference on May 30, 2008, and a bench trial on June 9, 2008.

On February 28, 2008, Defendant filed its Motion for Summary Judgment (#14), a Memorandum in Support (#15), and supporting Exhibits (#16). Defendant included a Statement of Material Facts which set out 45 facts, each of which was supported by the submitted documentation.

These well supported facts are as follows.

Plaintiff was hired by Defendant on September 9, 1998, and was employed as a Spotter at Defendant's Manteno, Illinois, warehouse facility. As a Spotter, Plaintiff was responsible for driving a tractor truck to transport semi-trailers full of Defendant's merchandise around the Manteno facility. As a logistics service provider for Sears retail stores, the business of Defendant's Manteno facility is seasonal, in that the retail stores "stock up" for the peak holiday season. As a result of this seasonal cycle, the Manteno facility hires numerous additional seasonal employees beginning in September of each year and lays off most of these employees by mid-December of each year.

On January 2, 2005, Plaintiff drove her tractor trailer over a pothole on Defendant's property while traveling less than 15 or 20 miles per hour. Plaintiff claims that, as a result, she was "flung around" the inside of her truck and injured her neck. Plaintiff did not report any injury on January 2, 2005, because she did not "think it would be something major." On January 4, 2005, Plaintiff came into work and filled out an accident report describing the incident. Also on January 4, Plaintiff provided a doctor's note stating that she would be unable to work until she saw an orthopedic doctor. Plaintiff did not work from January 4 to January 15, 2005. On January 17, 2005, Plaintiff provided Defendant with another doctor's note releasing her for light duty with no lifting over five pounds, no repetitive use of her upper extremities, and no pushing or pulling. Plaintiff reported for work on January 18 and 19, 2005. On January 21, 2005, Plaintiff provided another doctor's note and was taken off work indefinitely. At the end of January 2005, Plaintiff was involved in a car accident which caused increased pain in her neck.

From January 21, 2005, to November 17, 2005, Plaintiff provided Defendant with monthly doctor's notes stating that she remained unable to work. However, Plaintiff testified at her

deposition that, during that time, there were no day-to-day activities that she was unable to perform. She testified that, on April 15, 2005, she worked for approximately 13 hours as an election judge, a job that required sitting, standing and walking around. She testified that she also assisted her husband in putting up election signs. She testified that, by November 2005, she had no physical limitations whatsoever.

Sometime between January 21, 2005, and March 2005, Linda Carpenter, one of Defendant's Human Resources assistants, asked Plaintiff to come in and fill out Family Medical Leave Act (FMLA) paperwork. Plaintiff completed the FMLA paperwork on March 28, 2005, and indicated that her medical leave had begun on January 20, 2005. On April 11, 2005, Defendant sent Plaintiff a notice that her FMLA leave would expire on April 13, 2005, and that Plaintiff would "not be entitled to job protection for additional leave." Plaintiff applied for workers' compensation benefits in May 2005. Plaintiff testified that she did not have any conversations with anyone at Defendant regarding her workers' compensation claim.

On December 15, 2005, Plaintiff brought Defendant a note from her doctor stating that she was free to return to work "full duty" beginning on December 19, 2005. Plaintiff delivered the note to Carpenter and Erika Schwanbeck, another Human Resources assistant. Plaintiff testified that Carpenter said that she did not believe there was a job available for Plaintiff but would get back to her. Plaintiff testified that Carpenter and Schwanbeck joked that Plaintiff probably set off the metal detector because of metal in her neck.

Robin Batka, Defendant's Human Resources Manager at the Manteno warehouse facility, was out of the office on December 15, 2005, so she received the note from Plaintiff's doctor on December 16. Between September and November 2005, Defendant had hired approximately 40

additional employees for seasonal work. The last seasonal employee hired, Alex Snodsmith, a college student working over his winter break, was hired in November 2005. By December 15, which was the close of the holiday season, Defendant was in the process of terminating these 40 additional employees. The facility laid off at least 25 employees between December 15 to December 31, 2005, and Alex Snodsmith's seasonal employment ended on January 13, 2006. There were absolutely no open positions in the facility, seasonal or permanent, at the time Plaintiff sought to return to work. Plaintiff testified at her deposition that she was not aware of anyone hired by Defendant between December 15, 2005, and early 2007. On December 16, 2005, Batka wrote a letter to Plaintiff stating that there were no open positions available. Batka stated that they were in the process of releasing their temporary associates and seasonal employees. Batka informed Plaintiff that she was being taken "off role, effective immediately."

Plaintiff testified that she first contacted the Equal Employment Opportunity Commission (EEOC) by telephone on December 26, 2006. Plaintiff did not fill out an EEOC Charge Questionnaire until January 5, 2007. Plaintiff did not sign a Charge of Discrimination until January 20, 2007, and her charge was filed on January 25, 2007.

Defendant argued, based upon these facts, that it was entitled to summary judgment on both of Plaintiff's claims. Defendant argued that Plaintiff's ADA claim was time-barred. Plaintiff also argued that Plaintiff could not prevail on this claim because she was not disabled under the ADA and was not terminated because of her disability but, rather, for a valid, non-pretextual reason. Defendant further argued that Plaintiff could not prove a claim of retaliation for filing a workers' compensation claim.

In her three-page Memorandum in Opposition to Defendant's Motion for Summary

Judgment (#17), Plaintiff did not respond to any of the 45 facts listed in Defendant's Statement of Material Facts. Plaintiff set out her own one-paragraph statement of facts, and pointed out that she was a permanent employee who had worked for Defendant since 1998. She included the additional fact that she had surgery on her neck on September 12, 2005. Plaintiff also stated that she received the letter from Defendant informing her that her employment was terminated on December 19, 2005. Plaintiff stated that she received another letter from Defendant on December 24, 2005. Plaintiff did not respond to Defendant's arguments regarding her ADA claim, essentially conceding that Defendant is entitled to summary judgment on that claim. As far as her retaliatory discharge claim, Plaintiff argued that Defendant had not shown there was no position available when Plaintiff asked to return to work. In support of this argument, Plaintiff attached a copy of a letter sent to her by Defendant on December 21, 2005, which she received on December 24, 2005, regarding the expiration of her leave of absence. Plaintiff argued that the letter clearly and reasonably implied that her leave was extended to January 20, 2006, and that, if she supplied Defendant with a release to return to work prior to that date, she would have a job.

In its Reply (#19), Defendant first argued that, because Plaintiff failed to respond to Defendant's Statement of Material Facts, these facts should be deemed admitted. Defendant also noted that the letter attached to Plaintiff's Memorandum was an automated letter sent by Defendant's Associate Service Center in Tucker, Georgia, two days after Plaintiff's employment was terminated. Defendant pointed out that Batka's affidavit was filed with this court as an Exhibit in support of Defendant's Motion for Summary Judgment. In her affidavit, Batka stated that there were no open positions when she received Plaintiff's doctor's note on December 16, 2005. Batka stated that she therefore sent a letter to Plaintiff letting her know she was taken off the role, effective

immediately. Batka stated that "[j]ust a few days later, and without knowing that [Plaintiff's] employment had terminated, the Sears Employee Service Center in Tucker, Georgia sent out an automatic notification that [Plaintiff's] employment would be terminated on January 20, 2006 if she did not return from leave by that time." Batka stated that she "was unaware of this notification from the Sears Employee Service Center, which went out after [Plaintiff's] employment had been terminated."

Defendant argued that Plaintiff has admitted there was no open position at Defendant's Manteno facility at the time she attempted to return to work so the letter relied upon by Plaintiff cannot be read to "imply" that there was any open position for Plaintiff. Defendant further argued that Plaintiff had not shown any link between her termination and her application for workers' compensation benefits. Defendant pointed out that Plaintiff freely admitted that no one from Defendant ever mentioned her workers' compensation claim to her and that the timing of her termination, seven months after her workers' compensation claim, was far too long to support any inference of discrimination.

## ANALYSIS

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v.

Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex Corp., 477 U.S. at 322-23; see also Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004). Moreover, when the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. Waldridge, 24 F.3d at 922; Columbia Pictures Indus., Inc. v. Landa, 974 F. Supp. 1, 3 (C.D. Ill. 1997). In this case, Plaintiff did not respond to Defendant's Statement of Material Facts, and these facts are therefore deemed admitted by Plaintiff.

II. ADA CLAIM

An EEOC charge claiming discrimination under the ADA must be filed within 300 days "after the alleged unlawful employment practice occurred." Stepney v. Naperville Sch. Dist. 203,

392 F.3d 236, 239 (7th Cir. 2004), quoting 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a).  It is clear from the undisputed facts in this case that Plaintiff did not file her charge of discrimination within 300 days of her termination.  Therefore, her ADA claim is time-barred.  Plaintiff has conceded as much by not responding to Defendant's Motion for Summary Judgment regarding her ADA claim.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim under the ADA.

### III.  RETALIATORY DISCHARGE

In her Complaint, Plaintiff alleged that she was discharged in retaliation for filing a workers' compensation claim, in violation of Illinois law.  Because this court has determined that judgment must be entered in favor of Defendant on Plaintiff's only federal claim, this court must determine whether it has supplemental jurisdiction over Plaintiff's remaining state law claim.  This court concludes that it retains discretion to exercise supplemental jurisdiction over Plaintiff's pendent state law claim pursuant to 28 U.S.C. § 1367.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).  The Seventh Circuit has identified three situations in which jurisdiction over supplemental claims should be retained even though the federal claims have dropped out: (1) where the statute of limitations would bar the refiling of the supplemental claim in state court; (2) where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and (3) where it is obvious how the claims should be decided.  Williams Electronics Games, Inc. v. Garrity, 479 F.3d 904, 906-07 (7th Cir. 2007).

In this case, discovery has been completed and Defendant has expended some effort in filing the Motion for Summary Judgment.  While this case has probably not involved substantial federal judicial resources, this court does believe that some consideration should be given to the resources

expended by the parties, especially Defendant. This court also concludes that it is obvious at this point how the claim should be decided. Therefore, this court will, in its discretion, exercise supplemental jurisdiction over Plaintiff's state law claim. See Long v. Copart of Conn., Inc., 2005 WL 3087850, at *6 (N.D. Ind. 2005).

To make out a claim for retaliation in the workers' compensation context under Illinois law, a plaintiff must show: (1) that she was the defendant's employee before her injury; (2) that she exercised a right granted by the Illinois Workers' Compensation Act; and (3) that she was discharged from her employment with a causal connection to her filing a workers' compensation claim. Dotson v. BRP U.S. Inc., ___ F.3d ___, 2008 WL 746846 at *2 (7th Cir. 2008), quoting McCoy v. Maytag Corp., 495 F.3d 515, 521 (7th Cir. 2007). "The burden is on the employee to demonstrate that the termination was motivated by an unlawful intent to retaliate against the employee for exercising a statutory right to workers' compensation benefits." Dotson, 2008 WL 746846, at *2. "The element of causation is not met it the employer has a valid basis, which is not pretextual, for discharging the employee." Dotson, 2008 WL 746846, at *2, quoting Hartlein v. Ill. Power Co., 601 N.E.2d 720, 728 (Ill. 1992).

The Seventh Circuit stated:

> Illinois law does not require an employer to retain an at-will employee who is medically unable to perform the job. Nor is the employer obligated to reassign the employee to another position rather than terminate the employee.

Dotson, 2008 WL 746846, at *2. In Dotson, the court further noted that, under Illinois law, "an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a

9

compensable injury." Dotson, 2008 WL 746846, at *2, quoting Hartlein, 601 N.E.2d at 728. Based upon clear Illinois law, this court agrees with Defendant that it had no obligation to create a job for Plaintiff or "bump" any employee upon Plaintiff's attempt to return to work.

In this case, Defendant has shown that Plaintiff was terminated for a valid reason: no position was available when her doctor released her to return to work. Plaintiff has argued that a form letter she received from the Sears Employee Service Center in Tucker, Georgia "implied" that she would have a job if she was released to return to work. This court, however, agrees with Defendant that Plaintiff admitted there was no open position at the time she attempted to return to work. Therefore, this court concludes that any "implication" from the letter relied upon by Plaintiff cannot contradict this admission that no position was available at the Manteno facility. In fact, Plaintiff testified at her deposition that she was not aware of anyone hired by Defendant between December 15, 2005, and early 2007. Therefore, this court concludes that Plaintiff cannot meet the element of causation. See Dotson, 2008 WL 746846, at *2. Moreover, this court agrees with Defendant that, because Plaintiff testified that no one from Defendant ever mentioned her workers' compensation claim, she has not shown that the articulated reason for her termination is pretextual. In fact, this court concludes that Plaintiff has not provided this court with any evidence linking her termination with her exercise of rights to workers' compensation benefits. See Dotson, 2008 WL 746846, at *5.

For all of the reasons stated, this court agrees with Defendant that it is entitled to summary judgment on Plaintiff's retaliatory discharge claim.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#14) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

(2) This case is terminated. The final pretrial conference scheduled for May 30, 2008, and the bench trial scheduled for June 9, 2008, are hereby VACATED.

ENTERED this 22nd day of April, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE